UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EMR (USA HOLDINGS) INC.,

                Plaintiff,

*v.*

KEN GOLDBERG,

                 Defendant.

NO.: 18-cv-_____

**COMPLAINT**

Plaintiff EMR (USA Holdings) Inc. ("EMR"), by and through its attorneys of record, Holwell Shuster & Goldberg LLP, files this Complaint and, in support thereof, states and alleges as follows:

## NATURE OF ACTION

1.     This is an action for contractual indemnity and to recover money damages arising out of Defendant Ken Goldberg's ("Goldberg"): (1) breaches of continuing representations, warranties, and covenants; and (2) fraud and fraudulent inducement in connection with Goldberg's sale of a business to EMR for more than $100 million.

## JURISDICTION AND VENUE

2.     The Court has jurisdiction under 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, exclusive of interest and costs. The parties are completely diverse:

    a.     Plaintiff EMR (USA Holdings) Inc. is a corporation formed under the laws of the State of Delaware. Its principal place of business is currently located in Bellmawr, New Jersey.

    b.     Defendant Ken Goldberg is an individual who is domiciled in Texas.

EMR is a citizen of Delaware and New Jersey for purposes of diversity. Goldberg is a citizen of Texas for purposes of diversity. There is complete diversity between the parties.

3.      Goldberg is subject to this Court's jurisdiction. The claims asserted herein arise directly out of Goldberg's purposeful availment of the privileges and protections of New York law, and it is consistent with traditional notions of fair play and substantial justice to require that he litigate in New York. Further, Goldberg agreed to a forum-selection clause that required the disputes raised in this Complaint to be resolved in a court of competent jurisdiction in New York, New York. The transaction at issue was conducted and performed, in part, in New York.

4.      Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this District because a substantial part of the events giving rise to the claims occurred in this District. The parties agreed to a forum-selection clause stating that claims arising under the parties' contract or the transactions contemplated thereby must be "brought in a court of competent jurisdiction located in New York, New York."[1] The initial transaction was conducted, in part, in New York.

## PARTIES

5.      Plaintiff EMR is a Delaware corporation.

6.      Defendant Goldberg is an individual and a citizen of Texas. Mr. Goldberg may be served with process at 4 Robledo Drive, Dallas, Texas 75230, or wherever he may be found.

## STATEMENT OF FACTS

7.      EMR is the holding company for the United States operations of a global scrap-metal-recycling business. EMR conducts its business through regional operations throughout the United States.

8.      Goldberg, along with his brother, owned a scrap-metal-recycling business headquartered in Dallas, Texas with operations primarily in the South and Southwest. That

---

[1] The quoted language is in all capital letters in the contract but reproduced in normal type here for readability.

business was known as Gold Metal Recyclers, which operated through numerous entities (collectively, "Gold Metal").

9.      On or around August 31, 2011, EMR (USA Holdings) LLC, as purchaser, and Goldberg and others, as sellers, entered into a Contribution and Sale Agreement (the "Agreement") under which the sellers (including Goldberg) agreed to sell Gold Metal and all of its assets—save for several specifically excluded assets—to EMR for more than $100,000,000.

10.     In or around January 2013, EMR (USA Holdings) LLC converted into a corporation, EMR. For purposes of clarity, EMR refers to itself pre- and post-conversion interchangeably as "EMR" unless otherwise noted.

11.     The transaction generally involved the following essential elements. A new limited liability company, known as EMR Gold Recycling, LLC ("EMR Gold"), was formed. The sellers assigned their interests in Gold Metal to EMR Gold and received payment of 51% of the purchase price. EMR was issued 51% of the membership interest in EMR Gold, and the sellers were issued the remaining 49%. Over the next six years, the sellers periodically put their membership interests in EMR Gold to EMR for payment of the remainder of the purchase price. Eventually, EMR came to own 100% of the membership interests of EMR Gold. One of the sellers was Goldberg.

12.     The Agreement contained numerous: (a) representation and warranties; and (b) covenants and agreements, running from the sellers to EMR.

13.     One of the representations and warranties made to EMR by each of the sellers, including Goldberg, was that each seller entity "has good and indefeasible title to all of the assets it purports to own." That representation and warranty is found in Section 3.3 of the Agreement.

14.     One of the covenants and agreements made to EMR by each of the sellers, including Goldberg, was that all "Confidential Information" of each seller entity comprised "valuable assets

constituting part of the assets" sold to EMR and would be owned exclusively by EMR. Confidential Information was defined broadly as "all customer, prospect and marketing lists, sales data, intellectual property, employee information, proprietary information, trade secrets and other confidential information." That covenant and agreement is contained in Section 5.9 of the Agreement. Use of the capitalized term Confidential Information in this Complaint refers to that term as defined in the Agreement.

15.     Goldberg undertook a continuing obligation to treat Confidential Information as confidential "and not to make use of such information for [his] own purposes or for the benefit of any other" person. Goldberg further undertook a continuing obligation to "use reasonable efforts to cause [his] representatives" to treat the Confidential Information as confidential and not to use such information for the benefit of any other person. That covenant and agreement is contained in Section 5.9 of the Agreement.

16.     The Agreement provides that the representation and warranty in Section 3.3 of the Agreement "will survive indefinitely." The Agreement further provides that all covenants and agreements "will survive . . . indefinitely."

17.     The Agreement further provides, in Article VII, a right of indemnity running from the sellers, including Goldberg, to the benefit of EMR. The contractual indemnity right requires Goldberg (among others) to hold EMR and its affiliates harmless from any and all "out-of-pocket Liabilities, obligations, claims, contingencies, damages, costs and expenses" that EMR or its affiliates may suffer or incur as a result of or relating to any seller's breach of representation, warranty, covenant, or agreement.

18.     Following closing of the 2011 transaction, Goldberg continued to work with EMR through EMR Gold and related entities. Goldberg served as a manager of EMR Gold until 2013

4

and as an officer of EMR Gold until 2014. In those positions, he oversaw the operations, and directed the strategy, of EMR Gold, including its use of the Confidential Information acquired from Gold Metal. And in those positions, he owed duties to both EMR Gold and its member, EMR.

19.     In 2017, Goldberg, together with his son, Richard, opened a new scrap-metal-recycling business called Geomet Recycling ("Geomet") in or around Dallas, Texas. Goldberg used EMR's Confidential Information, which comprised valuable assets sold to EMR, to launch Geomet. Among the Confidential Information used for the benefit of Geomet was:

    a.     Customer lists;

    b.     Supplier lists;

    c.     Employee information;

    d.     Sales data;

    e.     Pricing and margins information; and

    f.     Strategic hedging information.

20.     Using employee information, which comprised a portion of the Confidential Information sold to EMR, Goldberg recruited many of EMR Gold's important employees for employment at Geomet.

21.     Goldberg used Confidential Information that had been sold to EMR in order to establish and operate Geomet.

22.     In pending litigation in Texas state court involving Geomet, Goldberg, and others, Goldberg has stated under penalty of perjury as follows:

    a.     Having worked in the scrap metal recycling industry for some time, including as an employee of EMR Gold, it is my opinion that supplier and consumer information is not confidential or proprietary.

5

      b.     It is customary in the industry for parties to share information openly, including contact information, inventory, transaction history, pricing, and volumes.

23.     Goldberg's testimony conflicts with his continuing obligations under the representations, warranties, covenants, and agreements that he made in the Agreement.

24.     Goldberg has used, and has caused Geomet to use, Confidential Information that was sold to EMR in the Agreement. Goldberg's use of Confidential Information violates his obligations under the Agreement and has caused EMR to suffer damages for which it is indemnified by Goldberg.

25.     The Agreement states that a prevailing party is entitled to recover its reasonable attorney's fees and costs. EMR has been required to retain the undersigned counsel to protect its interests and rights. The Agreement also provides for specific performance.

26.     The Agreement states that is "binding upon and inure[s] to the benefit of the parties and their respective successors and permitted assigns." EMR is the successor to EMR LLC, so the Agreement "inure[s] to" EMR's benefit.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**<br>**(Contractual Indemnity)**

27.     EMR incorporates by reference all of the allegations set forth in the foregoing paragraphs as if set forth fully herein.

28.     EMR and Goldberg are parties to a contract, namely the Agreement, that provides a right of indemnity running from Goldberg to EMR.

29.     EMR is entitled to indemnification by Goldberg under the Agreement for any and all "out-of-pocket Liabilities, obligations, claims, contingencies, damages, costs and expenses"

that EMR may suffer as a result of or relating to the breach of a: (a) representation or warranty; or (b) covenant or agreement, by any of the sellers.

30.    EMR has suffered indemnifiable losses as a result of breaches of representations, warranties, covenants, and agreements by at least one seller, triggering Goldberg's indemnity obligation.

31.    EMR began suffering losses no earlier than 2017, when Goldberg began using EMR's Confidential Information in violation of his obligations under the Agreement. Since that time, Goldberg has used EMR's Confidential Information for the benefit of Geomet, which has caused EMR to suffer indemnifiable losses.

32.    The contractual indemnity cap in Section 7.1 of the Agreement does not apply because EMR has suffered indemnifiable losses as a result of one or more sellers' breach of Section 3.3 of the Agreement.

33.    EMR seeks indemnity from Goldberg to restore it to the position it would have been in had Goldberg performed under the Agreement, including for all losses suffered as a result of or relating to any seller's breach of a representation or warranty, or covenant or agreement, in the Agreement, together with EMR's reasonable attorney's fees, costs, and pre- and post-judgment interest at the highest rate allowed by law.

## SECOND CLAIM FOR RELIEF
### (Specific Performance)

34.    EMR incorporates by reference all of the allegations set forth in the foregoing paragraphs as if set forth fully herein.

35.    Section 8.10 of the Agreement contains a consent "to the issuance of injunctive relief . . . to compel specific performance[any] party's obligations and to the granting . . . of specific performance of its obligations hereunder, without posting of bond or other security."

7

36.     Goldberg and EMR are parties to a contract, namely the Agreement. The Agreement requires Goldberg treat the Confidential Information as confidential and not to make use of the Confidential Information for his own purposes or for the benefit of any person other than EMR. The Agreement also requires Goldberg to use reasonable efforts to cause his representatives to treat the Confidential Information, and not to use it, in the same manner.

37.     EMR has performed its obligations under the Agreement and, to the extent any obligations remain outstanding, it is ready, willing, and able to perform those obligations.

38.     It is within Goldberg's power to:

   a.     Treat EMR's Confidential Information as confidential;

   b.     Refrain from using EMR's Confidential Information for his own purposes or for the benefit of any person other than EMR;

   c.     Cause his representatives to treat EMR's Confidential Information as confidential; and

   d.     Cause his representatives to refrain from using EMR's Confidential Information for his own purposes or for the benefit of any person other than EMR.

39.     EMR is without an adequate remedy at law in the absence of an order of specific performance. In the Agreement, Goldberg agreed that, even if damages are available, EMR would still lack an adequate remedy at law if Goldberg failed to perform his agreements and covenants under the Agreement.

40.     EMR seeks an injunction ordering specific performance compelling Goldberg to comply with Section 5.9 of the Agreement and to recover its reasonable attorney's fees and costs as provided in the Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff EMR (USA Holdings) Inc. respectfully requests that judgment be

entered in favor of EMR and against Goldberg awarding EMR:

a)   Indemnification for all losses suffered as a result of or relating to any seller's breach of a representation or warranty, or covenant or agreement, in the Agreement;

b)   Actual damages in an amount to be determined;

c)   Reasonable attorney's fees and costs as set forth in the Agreement;

d)   Pre- and post-judgment interest as allowed by law;

e)   An injunction of specific performance as set forth above; and

f)   Such other and further relief as the Court may deem just and proper.

Dated: August 28, 2018                    Respectfully submitted,

                                          HOLWELL SHUSTER & GOLDBERG LLP


                                          By:  /s/ *Neil R. Lieberman*
                                               Neil R. Lieberman
                                               nlieberman@hsgllp.com

                                               425 Lexington Avenue
                                               New York, NY 10017
                                               (646) 837-5151

OF COUNSEL

GOLDFARB PLLC

Jeffrey Goldfarb
jgoldfarb@goldfarbpllc.com

2501 N. Harwood St., Suite 1801
Dallas, TX 75201
(214) 583-2233
*Pro Hac Vice To Be Filed*

                                          *Attorneys for Plaintiff*