UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EMR (USA HOLDINGS) INC.,

                              Plaintiff,

                – against –

KEN GOLDBERG and NEIL GOLDBERG

                              Defendants.

**OPINION & ORDER**

18 Civ. 7849 (ER)

RAMOS, D.J.:

EMR (USA Holdings), Inc. ("EMR") brings this action against Ken and Neil Goldberg relating to a sale agreement the parties signed.  On September 30, 2019, the Court provided the parties a copy of its opinion on the Goldbergs' motion to dismiss (the "September 30 Order"),[1] which allowed EMR's claim for specific performance against Ken to proceed, but dismissed EMR's claims for indemnity against Ken and Neil as unripe because EMR had not established an underlying liability for which it could be indemnified.  Less than a month after the Court issued the September 30 Order, EMR requested to file the instant motion.  In its proposed complaint, attached as an exhibit to EMR's motion ("Proposed Complaint"), EMR seeks to add a claim for breach of contract against Ken, and requests rescission and other damages as a result of the alleged breach. The Proposed Complaint also names Neil "to the extent rescission and rescissory damages are requested."  The Goldbergs oppose EMR's motion.

For the reasons stated below, EMR's motion is GRANTED in part and DENIED in part.

---

[1] A redacted copy of this decision was filed on the docket on October 25, 2019.  (*See* Doc. 121.)

I.      **BACKGROUND**

A.      <u>Factual Background</u>

The following facts are taken from the Proposed Complaint unless otherwise noted.

EMR is the United States holding company for a global scrap-metal-recycling business.  (Proposed Complaint ¶ 8.)  It operates throughout the United States through its regional operating companies.  (*Id.*)  The Goldbergs owned a scrap-metal recycling business, Gold Metal Recyclers, which was based in Texas and operated throughout the South and Southwest via various entities (together, "Gold Metal').  (*Id.* ¶ 9.)  On August 31, 2011, the Goldbergs sold Gold Metal and all its assets to EMR for more than $100,000,000.  (*Id.* ¶ 10.)  The transaction was executed pursuant to a Contribution and Sale Agreement (the "Sale Agreement").  (*Id.*)  As per the Agreement, a new company, EMR Gold Recycling, LLC ("EMR Gold") was formed, of which EMR eventually owned 100% membership interest.  (*Id.* ¶ 12.)

The Sale Agreement, in Section 5.9, contained a provision that all of Gold Metal's "Confidential Information" comprised "valuable assets" and that, after the transaction was complete, EMR would have exclusive ownership of this information.  (*Id.* ¶ 14.)  The Goldbergs had a continuing obligation "not to make use of such information for [their] own purposes or for the benefit of [anyone else]."  (*Id.* ¶ 15 (quoting the Sale Agreement § 5.9).)  The Goldbergs also had a continuing obligation to "use reasonable efforts to cause [their] representatives" to treat the Confidential Information with the same care. (*Id.*)  All representations, warranties, covenants, and agreements were to "survive indefinitely."  (*Id.* ¶ 16.)

In 2017, Ken and his son, Richard, started a new scrap-metal-recycling business, Geomet Recycling ("Geomet").  (*Id.* ¶ 18.)  EMR alleges that Ken used its Confidential Information to start and operate the business, including customer and supplier lists, employee information, sales data, and so forth, and that he continues to use this information to the detriment of EMR.  (*Id.* ¶¶ 18-19.)  EMR also alleges that Ken caused Geomet and his representatives to the use the Confidential Information.  (*Id.* ¶ 21.)

According to EMR, it would not have agreed to enter into the Sale Agreement if Ken had not made the representations in Section 5.9 and if it had known that Ken would breach those representations.  (*Id.* ¶ 32.)  According to EMR, it "paid the sellers (including Ken) more than $100 million for the purchase and exclusive use of Gold Metal's assets (including especially the Confidential Information)," and that because of Ken's breaches, it "no longer has that benefit of its bargain."  (*Id.* ¶ 33.)

The Sale Agreement also contains two other clauses that bear on this motion, both found in Section 7 of the Sale Agreement.  The first, Section 7.9, provides as follows:

> <u>Exclusive Remedy</u>.  EMR and the Sellers each acknowledge and agree that, from and after the Closing, its sole and exclusive remedy with respect to any and all claims (other than claims for fraud and other equitable claims for injunctive relief or specific performance) relating (directly or indirectly) to the subject matter of this Agreement or the transactions contemplated hereby . . ., regardless of the legal theory under which such liability or obligation may be sought to be imposed whether sounding in contract or tort, or whether at law or in equity, or otherwise, shall be pursuant to the provisions set forth in [Section 7].

Section 7 is titled Indemnification, and includes a variety of other provisions, including one that provides for the Goldbergs' indemnification of EMR

> from any and all out-of-pocket Liabilities, obligations, claims, contingencies, damages, costs and expenses, including all court costs, litigation expenses and reasonable attorney's fees . . . that any EMR Party may suffer or incur as a result of or relating to:  (a) the breach of any representation or warranty made by the Sellers in this Agreement or in the closing certificate delivered by the Sellers; [or] (b) the breach of any covenant or agreement of any Seller in this Agreement or in the closing certificate delivered by the Sellers. . ..

3

(Sale Agreement, § 7.1.)  Section 7.1 further provides that these obligations are joint and several.  (*Id.*)

        B.     <u>The Texas Litigation</u>

This is not the only litigation spurred by Ken's formation of Geomet.  As explained in greater detail in the Court's September 30 Order, on October 13, 2017, EMR and its operating companies, including EMR Gold, sued Geomet, Ken, and eleven other previous employees of EMR Gold in Texas State Court (the "Texas Case").  (*See* Doc. 121 at 4.)  In that case, EMR and the other plaintiffs bring the following eight causes of action:  (1) violation of the Texas Uniform Trade Secrets Act by EMR against all defendants; (2) breach of fiduciary duty by EMR Gold against Ken; (3) breach of fiduciary duty by all plaintiffs other than EMR against all defendants other than Ken and Geomet; (4) tortious interference with existing contracts; (5) tortious interference with employee contracts by Gold Metal and EMR against Ken; (6) breach of contract by EMR Gold against Ken; (7) conspiracy; and (8) an application for a temporary restraining order and temporary injunction.  (*Id.*)  These claims spring from various alleged misuses of EMR's confidential information.  (*Id.*)  The confidential information at issue is both the information that was purchased by EMR in the Sale Agreement, as well as confidential information developed after the sale transaction.  (*Id.*)

There is currently a temporary injunction in place in the Texas litigation that prevents the defendants in that action from using any confidential information and trade secrets they may have acquired from the plaintiffs.  (*Id.*)  The defendants in that case filed a motion to dismiss under Texas state law.  (*Id.*)  The trial court denied the motion, and the appeals court affirmed in part and reversed in part on August 22, 2019 (the "August Texas Decision").  (*Id.*)  In the August Texas Decision, the Texas appeals court ruled in

ways Defendants claim are beneficial to their position here.  On January 23, 2020, how-ever, the same court withdrew the August Texas Decision, and replaced it with one that affirmed the trial court's denial of defendants' motion.  (*See* Doc. 135-1.)

## II.    LEGAL STANDARD

Rule 15 allows a party to amend its pleading with the other party's written con-sent or the Court's leave.  Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave [to amend] when justice so requires."  *Id.*  In *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160 (2d Cir. 2015), the Second Circuit reaffirmed that the "liberal spirit" of Rule 15 embodies a "strong preference for resolving disputes on the merits."  *Id.* at 190–91 (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011)).  Motions to amend are ultimately within the discretion of the district court judge, who may deny leave to amend for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  The party opposing the motion to amend bears the burden of establishing that amendment would be futile, unduly prejudicial, or in bad faith.  *Usov v. Lazar*, No. 13 Civ. 818 (RWS), 2014 WL 4354691, at *8 (S.D.N.Y. Sept. 2, 2014).

The parties dispute whether EMR's motion is also subject to Rule 16's "good cause" standard.  The Goldbergs argue that it does because a scheduling order has been entered in this case.  In *Parker v. Columbia Pictures Industries*, the Second Circuit held that "despite the lenient standard of Rule 15(a), a district court does not abuse its discre-tion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause."  204 F.3d 326, 340 (2d Cir. 2000).  EMR argues against the applicability of the good cause standard here because, under *Parker*, the standard only applies in instances in which the date to amend pleadings is fixed in the scheduling order, which it was not here.  Indeed, as EMR notes, at least

one court in this District has declined to apply the good cause standard for this reason. *See Contrera v. Langer*, 314 F. Supp. 3d 562, 576 n. 6 (S.D.N.Y. 2018) ("No such deadline has been set in this case, however. *Parker* is therefore inapposite.")  The rub, however, is that while the scheduling order the parties submitted did not provide a deadline for amendment, it arguably should have. *See* Fed. R. Civ. P. 16(b)(3)(A) ("The scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions.")

The problem is largely an academic one, however, for at least two reasons.  First, "Courts since *Parker* have interpreted that case to stand for the proposition that the 'good cause' standard is permitted but not mandated when a party seeks to amend its pleadings after the deadline set in the scheduling order." *Ramsay-Nobles v. Keyser*, No. 16 Civ. 5778 (CM), 2018 WL 6985228, at *7 (S.D.N.Y. Dec. 18, 2018) (citing *Bridgeport Music, Inc. v. Universal Music Grp., Inc.*, 248 F.R.D. 408, 412 (S.D.N.Y. 2008)).  And here, the Court elects not to apply the good cause standard.  EMR sought amendment in a manner that complied with the scheduling order entered, and did so less than 30 days after the Court provided the parties with a copy of its decision dismissing aspects of EMR's prior complaint.  It seems to the Court that the amendment is sought at least in part in response to that decision.  Second, the Court finds that even if it were to apply the Rule 16 good cause standard, which focuses on the diligence of the moving party, it would come to the same conclusion. *See Parker,* 204 F.3d at 340 (citing *In re Milk Prods. Antitrust Litig.,* 195 F.3d 430, 437 (8th Cir. 1999)).

## III.   DISCUSSION

The Goldbergs argue that leave to amend should be denied because it would be futile.  They argue that the proposed breach of contract claim is barred by the Sale Agreement and collateral estoppel principles, that *Colorado River* abstention would require dismissal of the proposed breach of contract claim, that the proposed breach of contract claim fails to state a claim, and that the proposed breach of contract claim seeks

6

a double recovery.  They also argue that the proposed breach of contract claim is made in

bad faith, and that the addition of the proposed breach of contract claim would cause

undue prejudice.  The Court addresses each argument in turn.

     A.    <u>Futility</u>

An amendment to a pleading is futile if the proposed claim would not withstand a

motion to dismiss pursuant to Rule 12(b)(6).  *Dougherty v. N. Hempstead Bd. of Zoning*

*Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).  To withstand a motion to dismiss, the plaintiff

must allege sufficient facts that, when accepted as true, "state a claim to relief that is

plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at

556).  Because the Court evaluates the amendment "through the prism of a Rule 12(b)(6)

analysis," the Court accepts the plaintiff's factual allegations as true and draws all

reasonable inferences in favor of the plaintiff.  *Henneberry v. Sumitomo Corp. of Am.*,

415 F. Supp. 2d 423, 433 (S.D.N.Y. 2006).  However, the Court is not required to credit

legal conclusions, bare assertions, or conclusory allegations.  *Iqbal*, 556 U.S. at 678, 681,

686 (citing *Twombly*, 550 U.S. at 555).

     1.    <u>The Sale Agreement Bars the Proposed Breach of Contract Claim</u>

The Goldbergs argue the proposed breach of contract claim is barred by the

parties' Sale Agreement, which they assert provides that "besides 'claims for fraud' and

'equitable claims for injunctive relief or specific performance,' EMR's 'sole and

exclusive remedy with respect to any an all claims . . . relating (directly or indirectly to

the subject matter of the Sale Agreement' is indemnification."  (Doc. 132 at 6.)  EMR

counters that the Goldbergs' interpretation of the Sale Agreement would essentially leave

it without  means of recovering damages for Defendants' alleged breaches in light of the

Court's order, made upon the Goldbergs' motion, that EMR's claim for indemnity is not

ripe because no underlying liability has been established.  EMR argues that the Goldbergs cannot have it both ways—seek dismissal of indemnity claims as unripe because no underlying liability has been established, and prevent a claim seeking to establish the underlying liability because it is not a claim for indemnity.  EMR encourages the Court to find the Goldbergs' argument barred by the doctrine of judicial estoppel.

The clause at issue, Section 7.9, provides that the "sole and exclusive remedy with respect to any and all claims (other than claims for fraud and other equitable claims for injunctive relief or specific performance) relating . . . to the subject matter of this Agreement . . . shall be pursuant to the provisions set forth in [Section 7]."  Section 7 is titled Indemnification, and includes a provision that provides for Sellers indemnification of EMR "from any and all out-of-pocket Liabilities, . . . damages, costs and expenses. . . that any EMR Party may suffer . . . as a result of . . .:  (a) the breach of any representation or warranty made by the Sellers in this Agreement . . .; [or] (b) the breach of any covenant or agreement of any Seller in this Agreement. . .."  (Sale Agreement, § 7.1.)  The Goldbergs argue that these clauses, read together, foreclose the proposed breach of contract claim because it is not one for indemnity, fraud, or specific performance.

The Court need not now decide EMR's claim that judicial estoppel forecloses the Goldbergs' argument, and reserves such a determination for a later date when it has the benefit of more complete briefing and the Goldbergs have an opportunity to respond to EMR's judicial estoppel argument.

The Court does, however, find that the Goldbergs' interpretation of the Sale Agreement as precluding a claim for damages is not the only reading of the agreement. Section 7.9 provides that all claims relating to the Sale Agreement, other than those for fraud and other equitable claims for injunctive relief or specific performance, "shall be pursuant to the provisions set for in [Section 7]."  While this means all claims are governed by Section 7, it is not apparent to the Court on the record before it that this would necessarily mean that a breach of contract claim is barred because it is not one for

indemnification.  Section 7.1 specifies, among other things, that Sellers are to indemnify EMR for "any and all. . . damages. . . that any EMR Party may suffer or incur as a result of" Sellers' breach of a representation, warranty, covenant or agreement suggests a mechanism to bring a breach of contract claim.  Indeed, reading the Sale Agreement in the way the Goldbergs propose would seem to lead to an absurd result:  A claim for indemnification is barred because no underlying liability has been established, but a claim seeking to establish that underlying liability is barred because it is not one for indemnity. *See Wilder v. World of Boxing LLC*, 310 F. Supp. 3d 426, 441 (S.D.N.Y. 2018), *aff'd*, 777 F. App'x 531 (2d Cir. 2019) (A "contract should not be interpreted to produce a result that is absurd.") (citing *Lipper Holdings v. Trident Holdings*, 1 A.D.3d 170, 171 (1st Dep't 2003).

Because the Goldbergs have not shown that Section 7 unambiguously bars the proposed breach of contract claim, the Court finds that amendment would not be futile. *See DK LIPA LLC v. SB Energy Holdings, LLC*, No. 19 Civ. 1405 (LGS), 2020 WL 3000383, at *4 (S.D.N.Y. June 4, 2020) ("Defendants have not shown that the Agreement is unambiguous in a way that supports only their interpretation, as they must to prevail on a motion to dismiss.")

2.    *Colorado River* Abstention

The Goldbergs also argue that the proposed breach of contract claim would make this action more parallel to the Texas Case warranting dismissal or a stay of this entire case pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

This is not the first occasion on which the Goldbergs have raised a *Colorado River* abstention argument in this litigation.  They did so also in seeking to dismiss the last operative complaint, an argument the Court rejected.  In its September 30 Order, the

9

Court conceded that the "two cases will necessarily turn on the same questions of fact, and in some instances, law," but nevertheless determined that this action and the Texas Case are not parallel.  Specifically, the Court noted that the case in Texas concerns claims for state-based trade secrets and other tort claims, not the contract claims at issue here, and EMR does not seek specific performance of the Sale Agreement through the Texas Case.  The Court determined, therefore, that "the Texas litigation is incapable of disposing of EMR's claim for relief" and the relief sought in Texas is "a poor substitute for the relief sought by EMR in this action."  (Doc. 121 at 30.)

"Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the [f]ederal court having jurisdiction . . .." *Colorado River,* 424 U.S. at 817 (quoting *McClellan v. Carland,* 217 U.S. 268, 282 (1910)).  Abstention from exercising federal jurisdiction "is the exception, not the rule." *Id.* at 813.  In *Colorado River,* the Supreme Court explained that "[t]he doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, *is an extraordinary and narrow exception* to the duty of a District Court to adjudicate a controversy properly before it." *Id.* (internal quotation marks omitted) (emphasis added) (quoting *Cty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 (1959)).  The Court held that "in situations involving the contemporaneous exercise of concurrent jurisdictions," a federal court, in "exceptional" circumstances, may abstain from exercising jurisdiction when parallel state-court litigation could result in "comprehensive disposition of litigation" and abstention would conserve judicial resources. *Id.* at 813, 817–18 (internal quotations and citations omitted).  "Absent broad state court jurisdiction that would enable the state court to

dispose of the entire matter, including the issues before the federal court, abstention could hardly be justified on grounds of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Andrea Theatres, Inc. v. Theatre Confections, Inc.*, 787 F.2d 59, 62–63 (2d Cir. 1986) (quoting *Colorado River,* 24 U.S. at 817) (modification in *Andrea Theatres*); *see also Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 21 (E.D.N.Y. 2014) (same).

"An analysis of whether a court should abstain under *Colorado River* begins with a determination of whether the concurrent federal and state proceedings are 'parallel' in nature." *Fernandez v. City of New York*, 2017 WL 2894144, at *2 (S.D.N.Y. July 7, 2017) (citing *Dittmer v. Cty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)).  Federal and state proceedings are "parallel" for abstention purposes when "substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012).  "Perfect symmetry of parties and issues is not required.  Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of *all* claims presented in the federal case." *Shields v. Murdoch*, No. 11 Civ. 4917 (PGG), 2012 WL 4097199, at *5 (S.D.N.Y. Sept. 18, 2012) (quoting *In re Comverse Tech., Inc.*, No. 06 Civ. 1849 (NGG) (RER), 2006 WL 3193709, at *2 (E.D.N.Y. Nov. 2, 2006)) (emphasis in original) (internal quotation marks omitted).  If a court determines the actions are parallel, it next considers six factors, with the balance heavily weighted in favor of the exercise of jurisdiction.'" *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012)

(quoting *Moses H. Cone*, 460 U.S. at 16) (internal quotation marks omitted).  The six

factors are:

> (1) whether the controversy involves a res over which one of the courts has as-
> sumed jurisdiction, (2) whether the federal forum is less inconvenient than the
> other for the parties, (3) whether staying or dismissing the federal action will
> avoid piecemeal litigation, (4) the order in which the actions were filed, and
> whether proceedings have advanced more in one forum than in the other, (5)
> whether federal law provides the rule of decision, and (6) whether the state proce-
> dures are adequate to protect the plaintiff's federal rights.

> *Woodford v. Cmty. Action Agency of Greene County, Inc.*, 239 F.3d 517, 522 (2d

Cir. 2001) (internal citations omitted).

The Goldbergs argue the proposed breach of contract claim "brings this lawsuit

much closer to" the Texas Case.  The addition of the proposed breach of contract claim,

however, does not make the Texas Case any better at resolving *all* the claims at issue

here than it did at the time of the September 30 Order.  *See Shields*, 2012 WL 4097199, at

*5 ("[P]arallelism is achieved where there is a substantial likelihood that the state litiga-

tion will dispose of *all* claims presented in the federal case.'") (quoting *In re Comverse

Tech., Inc.,* No. 06 Civ. 1849 (NGG) (RER), 2006 WL 3193709, at *2 (E.D.N.Y. Nov. 2,

2006)) (emphasis in *Shields*); Doc. 121 at 29-30.  The addition of the proposed breach of

contract claim does not render the actions suddenly parallel—the Texas Case still does

not involve contract claims and the relief sought through that action remains a poor sub-

stitute for the relief sought here.

### 3.   Failure to Plead a Breach of Contract Claim Against Neil

The Goldbergs argue the proposed breach of contract claim is futile because it

fails to allege a breach of contract claim against Neil, specifically because it does not

allege that Neil breached the Sale Agreement and that EMR suffered damages as a result

of that breach.  EMR concedes that it does not allege that Neil breached the Sale

Agreement, but argues that Neil is a proper party because, pursuant to the Sale Agreement, he is jointly and severally liable for Ken's breaches.   The Court agrees. Section 7.1 of the Sale Agreement provides that the "Sellers, jointly and severally, shall indemnify, defend and hold harmless EMR . . . from any and all out-of-pocked Liabilities . . . that any EMR Party may suffer or incur as a result of or relating to" a breach by the Sellers.

Further, EMR argues that it included Neil as a party because the Goldbergs' counsel contended at the pre-motion conference that rescission would be inappropriate without him.  (Doc. 134 at 4 (citing Doc. 127 at 14:3-9.))  Courts have held that a party is properly in a lawsuit, even if no claim is made against it, if the party is necessary for purposes of a claim for rescission.  *See Hayrioglu v. Granite Capital Funding, LLC*, 794 F. Supp. 2d 405, 416 (E.D.N.Y. 2011).

#### 4.   Failure to State a Claim That Ken Breached the Sale Agreement

The Goldbergs argue that the proposed breach of contract claim is futile because it fails to state a claim that Ken breached the Sale Agreement.  The argument appears to rest almost entirely on factual findings in the August 22, 2019 opinion by the Court of Appeals for the Fifth District of Texas, which the Goldbergs contend undermine the plausibility of EMR's allegations.  (*See* Doc. 132 at 13-14.)

The Goldbergs argument fails for multiple reasons.  First, the August Texas Opinion was withdrawn, and replaced by one that does not make the same finding. Second, even if that opinion had not been withdrawn, the factual findings therein would not be properly the subject of judicial notice for present purposes.  *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("'A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'") (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.,* 146 F.3d 66, 70 (2d Cir. 1998); *Corley v. Jahr*, No. 11 Civ. 9044 (RJS) (KNF), 2013

WL 265450, at *6 (S.D.N.Y. Jan. 24, 2013), *report and recommendation adopted*, 2013
WL 1453367 (S.D.N.Y. Mar. 28, 2013) ("[T]he Court does not take judicial notice of
any factual findings recited in the state courts' opinions or any conclusions based on those
findings, since those findings are not admissible for their truth in this action.").

The Goldbergs, therefore, are left with the claims in the Proposed Complaint
itself.  But the Goldbergs do not point to any deficiencies in the allegations and the Court
is aware of none.  While the Goldbergs argue that certain of the damages requested in
connection with the breach of contract claim are improperly pled, their quarrel with the
pleading of "actual" damages seems to be simply that the claim alleged is not plausible.[2]
The Court disagrees.

Under New York law, the elements of a cause of action for breach of contract are
(1) the existence of a contract; (2) performance of the contract by one party; (3) breach by
the other party; and (4) damages suffered as a result of the breach.  *See, e.g., Beautiful
Jewellers Private Ltd. v. Tiffany & Co.,* 438 Fed. Appx. 20, 21–22 (2d Cir. 2011) (citing
*First Invs. Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998).  The Proposed
Complaint asserts that EMR and Ken and Neil entered into a Sale Agreement in 2011
with respect to sale of certain business assets, operations, and goodwill to EMR.
(Proposed Complaint ¶ 10.)  EMR alleges that it performed its obligations under the Sale
Agreement.  (*Id.* ¶ 23.)  EMR alleges that in agreeing to the Sale Agreement, Ken and
Neil undertook to treat certain information as confidential, to refrain from using that
Confidential Information for their own purposes, and to use reasonable efforts to cause
their representatives to do the same.  (*Id.* ¶ 28.)  The Proposed Complaint alleges Ken,
together with his son, started Geomet in 2017 and that he used and caused his

---

[2] The Goldbergs state that the Proposed Complaint "lacks concrete allegations of actual damages caused by
Ken's alleged use of confidential information," but nowhere explains why the alleged damages are
insufficiently concrete.  (Doc. 132 at 13.)  In any event, the Court disagrees with the Goldbergs' assertion.

representatives to use certain Confidential Information for the benefit of Geomet.  (*Id.* ¶¶ 18-19, 21, 29.)  EMR alleges that by using the Confidential Information for Geomet's benefit in contravention of the Sale Agreement, EMR was damaged because the improper use of the information reduced the value of EMR's use of the Confidential Information.[3] (*Id.* ¶¶ 33, 34.)  EMR also claims it was damaged by relying on the representations that Ken allegedly breached because it would not have entered the Sale Agreement had it known Ken would breach it and use the Confidential Information.  (*Id.* ¶¶ 32, 35.)

The Federal Rules require "only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).  The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)).  The Court finds that the proposed breach of contract claim would not be futile under this standard.

     5.    <u>Failure to State a Claim for Damages</u>

The Goldbergs take issue with certain of the damages requested for the proposed breach of contract claim, claiming that the inclusion of each would be futile.  The Court addresses each in turn.

     a)    Rescission

The Goldbergs argue that the proposed breach of contract fails to state a claim for rescission (a) because it has failed to name EMR Gold and (b) because rescission is not available here given the facts—namely, that EMR allegedly "unreasonable delay[ed] in

---

[3] The Goldbergs characterize the proposed breach of contract claim as "blanketly pointing to the opening of Geomet" to establish breach and damages.  (Doc. 132 at 14.)  But that is plainly not what EMR has done.  It has pointed to contractual terms it alleged Defendants breached and explained why it was damaged by the alleged breaches.

requesting this remedy," that the parties are unable "to return to the status quo prior to the execution of the Sale Agreement," and that an adequate remedy at law exists.  (Doc. 132 at 8.)

The first argument can be dispensed of quickly:  The Court already determined that even if EMR is a necessary party to this lawsuit, its absence does not compel dismissal because it could be joined without destroying diversity.  (Doc. 121 at 27.)

With regards to the second argument, that rescission is not available here given the facts EMR alleges, the Court agrees with EMR that dismissal at this juncture would be premature.  Courts frequently allow cases to proceed beyond the pleading stage in the face of similar obstacles.  *See, e.g.*, *Ambac Assur. Corp. v. EMC Mortg. Corp.*, 08 Civ. 9464 (RMB), 2009 WL 734073, at *2 (S.D.N.Y. Mar. 16, 2009) (denying motion to strike prayer for rescissory damages because relief requested would be determined once entitlement to remedies is proven) (citing *Delano Farms Co. v. California Table Grape Comm'n,* 07 Civ. 1610 (OWW), 2009 WL 426600, at *34 (E.D. Cal. Feb. 20, 2009)); *Assured Guar. Mun. Corp. v. UBS Real Estate Secs., Inc.*, 2012 WL 3525613, at *7 (S.D.N.Y. Aug. 15, 2012) ("It would be premature to strike a remedy at the pleadings stage.").  While claims for rescission must be commenced without unreasonable delay, the Second Circuit has stressed a "case-by-case" determination of reasonableness, noting that reasonableness "suggests a malleable standard that comports with the overall equitable nature of this remedy."  *Ballow Brasted O'Brien & Rusin P.C. v. Logan*, 435 F.3d 235, 240 (2d Cir. 2006) (citing *Adams–Mitchell Co. v. Cambridge Distrib. Co.,* 189 F.2d 913, 917 (2d Cir. 1951); 13 Am. Jur. 2d, *Cancellation of Instruments* § 2 (2005).)  Such a determination is inappropriate at the motion to dismiss stage.  *See Ace Sec. Corp. Home Equity Loan Tr., Series 2007-HE3 ex rel. HSBC Bank USA, Nat. Ass'n v. DB Structured Prod., Inc.*, 5 F. Supp. 3d 543, 557 (S.D.N.Y. 2014) ("[C]ourts are generally hesitant in any event to strike remedies before the parties have presented any facts

16

bearing on the suitability of equitable relief.") (citing *Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 894–98 (2d Cir. 1976).)

Similarly, while rescission is only available where there is no adequate remedy at law and the status quo may be substantially restored, *Syncora Guar. Inc. v. EMC Mortg. Corp.,* 874 F. Supp. 2d 328, 340 (S.D.N.Y. 2012), "courts applying New York law in this district routinely allow rescission claims 'to survive in the alternative at the pleading stage'" and find decisions about the ability to return to the status quo to present factual issues premature for resolution at the pleading stage. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, No. 12 Civ. 3723 (RJS), 2016 WL 5719749, at *3 (S.D.N.Y. Sept. 29, 2016) (quoting *Fertitta v. Knoedler Gallery, LLC,* No. 14 Civ. 2259 (JPO), 2015 WL 374968, at *12 (S.D.N.Y. Jan. 29, 2015)); *Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2006-OA1 v. DB Structured Prods., Inc.,* 958 F. Supp. 2d 488, 506 n. 15 (S.D.N.Y. 2013) ("Defendant's argument that rescission here will not ensure that the 'status quo be substantially restored[ ]' presents factual issues premature at this stage.").[4]

Accordingly, the Court does not find EMR's claim for rescission to be futile.

b)      "Supplier-Based Damages"

The Goldbergs also seek to preclude EMR from pleading what they term "supplier-based damages," a reference it seems to EMR's allegation that Ken used supplier lists sold to EMR for Geomet's benefit.  The Goldbergs argue the August Texas Decision dismissed these damages with prejudice.  As noted above, however, the August

---

[4] Defendants also argue the claim for rescission fails because EMR has already received valuable consideration in the Sale Agreement, other than exclusive use of the Confidential Information Ken allegedly used.  As the Court understands the claim, however, EMR's request for restitution is not based on failure of consideration, but because Ken's alleged breach defeats the purpose of the Sale Agreement.  *See* Proposed Complaint ¶ 33 ("The situation caused by Ken's breach is so far from the bargain that the parties struck so as to defeat it entirely."); *Loreley Fin. (Jersey) No. 3 Ltd.,* 2016 WL 5719749, at *2 (In order to obtain rescission, 'a party must allege fraud in the inducement of the contract; failure of consideration; an inability to perform the contract after it is made; or a breach in the contract which substantially defeats the purpose thereof.') (quoting *Mina Inv. Holdings Ltd. v. Lefkowitz,* 16 F. Supp. 2d 355, 362 (S.D.N.Y. 1998).)

Texas Decision is no longer in effect and, therefore, the findings made therein have no bearing on this suit.

c)      Consequential Damages

The Proposed Complaint requests "an award of actual and consequential damages from Ken, together with EMR's reasonable attorney's fees, costs, and pre- and post-judgment interest at the highest rate allowed by law." (Proposed Complaint ¶ 37.) The Complaint nowhere specifies which consequential damages EMR seeks, but it elsewhere includes requests for other damages, including "benefit-of-the-bargain damages." (*Id*. ¶¶ 35-36, 38.)

The Goldbergs argue that EMR's request for consequential damages is futile. They interpret EMR's request for benefit-of-the-bargain damages as requesting consequential damages and attack it because it is allegedly "devoid of any allegations concerning the reasonable certainty of EMR's alleged bargain, let alone any basis to calculate this alleged figure." (Doc. 132 at 12.)

Damages for breach of contract are generally divided into two types:  "[G]eneral damages which naturally and obviously flow from the breach, and the 'less obvious kinds of damages' known as 'special' or consequential damages. *Envirocon, Inc. v. Brookhaven Sci. Assocs., LLC*, No. 06 Civ. 3137 (TCP), 2006 WL 8435927, at *10–11 (E.D.N.Y. Dec. 26, 2006) (quoting Joseph M. Perillo, Calamari & Perillo on Contracts, § 14.5 at 570 (5th ed. 2003)).  Consequential damages are "[l]osses that do not flow directly and immediately from an injurious act but that result indirectly from the act."  DAMAGES, Black's Law Dictionary (10th ed. 2014).  So called benefit-of-the-bargain damages generally do not fall within this category. *See In re CCT Commc'ns, Inc.*, 464 B.R. 97, 118 (Bankr. S.D.N.Y. 2011) (ordinary benefit of the bargain market damages are recovered as general damages); *Latham Land I, LLC v. TGI Friday's, Inc.*, 96 A.D.3d 1327, 1331 (3rd Dep't 2012) (where the plaintiff sought to recover "the loss of the benefit

18

of the bargain," the damages sought were not barred by a contractual provision excluding consequential damages).

Consequential damages differ from general damages in another important way— as a form of special damages, they are subject to Federal Rule 9(g) which requires that they be specifically stated.  Fed. R. Civ. P. (9)(g).  Some courts have also required a plaintiff seeking consequential damages to allege facts from which it can be inferred that the damages were within the contemplation of the parties at the time of contracting.  *See Nat'l R.R. Passenger Corp. v. Arch Specialty Ins. Co.*, 124 F. Supp. 3d 264, 281 (S.D.N.Y. 2015).  "The primary purpose of Rule 9(g) is one of notice, both to inform defending parties as to the nature of the damages claimed in order to avoid surprise; and to inform the court of the substance of the complaint."  *Nat'l R.R. Passenger Corp.*, 124 F. Supp. 3d at 281 (quoting *Carnell Const. Corp. v. Danville Redevelopment & Hous. Auth.*, 745 F.3d 703, 725 (4th Cir. 2014) (internal quotation marks omitted)).

As discussed above, the Court is not convinced by the Goldbergs' description of EMR's request for benefit-of-the-bargain damages as consequential damages.  They are general damages not subject to Federal Rule 9(g).  *In re CCT Commc'ns, Inc.*, 464 B.R. at 116 n. 15 (benefit-of-the-bargain damages are "expectancy" damages and award the plaintiff for the "value of the promised performance less the costs he avoid by not performing his own side of the bargain") (citing 3 DOBBS § 12.2(1), at 25.); *U.S. ex rel. Feldman v. van Gorp*, 697 F.3d 78, 87 (2d Cir. 2012) (describing benefit-of-the-bargain damage calculation as that available in the "run-of-the-mine breach-of contract-case.") The Court sees no reason to dismiss them at the pleading stage.  *See Sporre S.A. de C.V. v. Int'l Paper Co.*, No. 99 Civ. 2638 (HB), 1999 WL 1277243, at *9 (S.D.N.Y. Dec. 30, 1999) ("[T]he central questions at issue here—whether the plaintiff has proven such damages with a reasonable certainty, and whether or not [plaintiff] has shown that such damages were reasonably contemplated—is an issue of *proof* rather than an issue of pleading.") (emphasis in original).

Reading the Proposed Complaint, however, the Court is uncertain what specific damages EMR seeks in its request for consequential damages.  EMR's briefing on this motion does not clarify the matter.  The Court, therefore, finds that the Proposed Complaint's request for consequential damages fails Fed. R. Civ. P. 9(g) requirement that they be specifically stated and that the Proposed Complaint's request for consequential damages would not survive a motion to dismiss.

d)      Reliance Damages

The Goldbergs also argue that the Proposed Complaint's request for reliance damages is futile.  The Goldbergs argue EMR has failed to plead that these damages are "proximate in effect" to the Sale Agreement and that these damages are "purely speculative" because the Proposed Complaint "nowhere alleges any conduct by EMR in reliance on the Sale Agreement, or the financial implication of such conduct."  (Doc. 132 at 12-13.)

The Proposed Complaint seeks "damages suffered in reliance on Ken's contractual promise."  (Proposed Complaint ¶ 35.)  According to the Proposed Complaint, Ken agreed in the Sale Agreement to not use the Confidential Information for the benefit of any person or entity other than EMR, that EMR relied on this representation, and would not have entered the Sale Agreement without the representation.  (*Id.* ¶ 32.)

The Court finds the Proposed Complaint's allegations of reliance damages sufficient to survive beyond the pleading stage.  The Goldbergs' arguments to the contrary are premature.  *Xpedior Creditor Tr. v. Credit Suisse First Bos. (USA) Inc.*, 341 F. Supp. 2d 258, 271–72 (S.D.N.Y. 2004) (noting that contract damages can take any of three forms, expectation, reliance or restitution damages, and that the question of whether claimed damages are caused by defendant's breach are premature for resolution at the motion to dismiss stage.)

6.      Collateral Estoppel

The Goldbergs argue the proposed breach of contract claim is futile because it is

barred by the August Texas Decision.  After the Goldbergs filed their papers, however,

that court withdrew the decision, meaning there has been no final decision on the merits

in the Texas Case.  This bars the application of collateral estoppel here.  *See Schwartz v.*

*HSBC Bank USA, N.A.*, 160 F. Supp. 3d 666, 674 (S.D.N.Y. 2016) ("For collateral

estoppel to apply, four elements must be satisfied: '[i] the issues of both proceedings must

be identical, [ii] the relevant issues were actually litigated and decided in the prior

proceeding, [iii] there must have been 'full and fair opportunity' for the litigation of the

issues in the prior proceeding, and [iv] the issues were necessary to support a valid and

final judgment on the merits.'") (quoting *Cent. Hudson Gas & Elec. Corp. v. Empresa*

*Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995).

7.      Double Recovery

The Goldbergs argue that "EMR cannot recover twice for the same alleged

injury."  (Doc. 132 at 20-21.)  The Goldbergs do not state exactly how this should factor

into the Court's analysis at this juncture, but the Court presumes the Goldbergs are

arguing that the supposed double recovery EMR seeks renders its proposed breach of

contract claim futile.

EMR counters that it seeks damages here not recoverable in the Texas litigation,

including rescissory damages, but in any event resolving questions of a supposed

improper recovery is improper at this stage.  The Court agrees that it is premature to

resolve the question of double recovery now.  Unlike the plaintiffs in some of the cases

the Goldbergs cite, EMR has not already recovered for the alleged injuries.  *See, e.g.*,

*Sparaco v. Lawler, Matusky, Skelly Engineers LLP*, 313 F. Supp. 2d 247, 252 (S.D.N.Y.

2004).  Moreover, courts in this Circuit have determined it inappropriate to dismiss a

claim as seeking double recovery at the pleading stage.  *See Bais Yaakov of Spring Valley*

*v. Educ. Testing Serv.*, 251 F. Supp. 3d 724, 750 (S.D.N.Y. 2017) (citing *Jenkins v. Nat'l*

*Grid USA*, No. 15 Civ 1219, 2017 WL 1208445, at *10 (E.D.N.Y. Mar. 31, 2017)).  The only pleadings-stage case the Goldbergs cite in support of their argument considered the issue in the context of *Colorado River* abstention, a doctrine the Court has considered and determined does not warrant dismissal here.  *See Abe v. New York Univ.*, No. 14 Civ. 9323 (RJS), 2016 WL 1275661, at *10 (S.D.N.Y. Mar. 30, 2016).

       B.    <u>Bad Faith</u>

The Goldbergs argue that EMR seeks amendment in bad faith.  As support for this claim, the Goldbergs point to EMR's waffling with regards to including Neil as a Defendant,[5] EMR's supposed "misrepresentations" about the nature of the Texas Case, and EMR's supposed delay in bringing the proposed breach of contract claim.

To establish that a movant's amendment is made in bad faith, the opponent must show "'something more than mere delay or inadvertence . . .,' such as seeking to derive some unique tactical advantage through their amendment."  *Usov*, 2014 WL 4354691, at *8 (quoting *Primetime 24 Joint Venture v. DirecTV, Inc.*, No. 99 Civ. 3307 (RMB) (MHD), 2000 WL 426396, at *5–6 (S.D.N.Y. Apr. 20, 2000)).

The Court finds that the Goldbergs have not satisfied their burden of showing bad faith.  The Goldbergs do not explain how EMR's supposed waffling with regards to Neil demonstrates bad faith or evinces a desire to derive some unique tactical advantage.  Rather the hesitancy of naming Neil as a defendant may arise from the fact that EMR does not allege that he breached the Sale Agreement.  Indeed, EMR notes that it added Neil in the Proposed Complaint precisely because the Goldbergs' counsel indicated that he believed the proposed complaint submitted to the Court in requesting a pre-motion conference was flawed *because it did not name Neil*.  (Doc. 127 at 14:3-9.)  Arguably one of the

---

[5] EMR's first complaint in this action did not name Neil.  Then, before Ken moved to dismiss the first complaint, it filed an amended complaint that included Neil.  After the Court dismissed the claim against Neil, EMR presented the Court, in connection with its request for a pre-motion conference on this motion, with a proposed amended complaint that did not include Neil.  The Proposed Complaint it eventually filed in connection with this motion, however, included Neil.

primary purposes of a pre-motion conference is to resolve disputes without the need of motion practice. *See Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir. 1987) ("[Pre-motion conferences] serve the useful purpose of narrowing and resolving conflicts between the parties and preventing the filing of unnecessary papers.")  It seems unreasonable to accuse EMR of bad faith for correcting a potential problem the Goldbergs have themselves identified.[6]

Nor is the Court convinced that EMR's descriptions of the Texas Case demonstrate bad faith with regards to seeking to file a Proposed Complaint.  The Goldbergs may disagree with those characterizations, but it is a far stretch to claim those representations—which concern the extent to which the Texas Case concerns the Sale Agreement—are made in bath faith.  The Goldbergs imply that EMR is attempting to vexatiously multiply proceedings but, as the Court has already recognized, while the two cases may turn on the same questions of fact and, in some instances, law, the Texas Case concerns state-based trade secret and other tort claims, while this action concerns contract claims.  (Doc. 121 at 30.)  The Proposed Complaint does not change that.

The Court is also unpersuaded that EMR's supposed delay justifies denying its request to bring the proposed breach of contract claim.  The Goldbergs assert that EMR was aware of the facts underlying Ken's breach in 2017 and needlessly waited 24 months to bring the claim.  "Delay alone, however, is insufficient to support a denial of a motion to amend." *Garcia v. Benjamin Grp. Enterprises, Inc.*, No. 09 Civ. 2671 (SJ), 2010 WL 11626957, at *1 (E.D.N.Y. July 12, 2010) (citing *Block v. First Blood Assocs.*, 988 F.2d

---

[6] Defendants' assertion that EMR should be judicially estopped from naming Neil because it did not do so in the proposed complaint it previously provided the Court is equally unpersuasive.  Judicial estoppel requires a showing that the party against whom estoppel is sought "succeeded in persuading a court to accept that party's earlier position," and that "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 743 (2001).  Neither is the case here.  The Court clearly did not allow EMR to proceed with this motion *because* of a potential defect Defendants noted.  Moreover, Defendants can hardly be said to be subjected to "unfair detriment" because EMR decided to keep Neil in the lawsuit in response to Defendants' own assertion that it would be improper to proceed without him.

344, 350 (2d Cir. 1993)).  In any event, as EMR notes, the proposed breach of contract claim relates to the same conduct and the same breaches as the indemnification claims that the Court dismissed without prejudice less than 30 days before EMR sought amendment.  EMR asserts that it studied the Court's decision and that its Proposed Complaint is a result of its consideration of that decision.  The facts support this justification.  The Court's decision dismissed the indemnity claims in part because EMR had not established an underlying liability for which it could be indemnified.  The Proposed Complaint seeks to establish that liability.  This sequence does not support a finding of bad faith.  *See Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 98 (S.D.N.Y. 2010) ("A change in litigation strategy is a legitimate reason for seeking to amend a pleading under the liberal standard of Rule 15(a), as is the correction of potential deficiencies in the complaint.") (citations omitted); *Luparello v. Inc. Vill. of Garden City*, 290 F.Supp.2d 341, 344 (E.D.N.Y.2003) ("[T]o the extent that the proposed amendments may be said to cure deficiencies in the complaint, that result is not a basis for their denial.").

      C.      <u>Undue Prejudice</u>

In determining whether a proposed amendment would unduly prejudice the opposing party, courts consider whether the amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).  "[T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Id.*  (quoting *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983)).  "Prejudice alone is insufficient to justify a denial of leave to amend; rather, the necessary showing is 'undue prejudice to the opposing party.'" *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) (citing *Foman v. Davis*, 371 U.S. 178, 299 (1962)).  "Complaints 'based solely on delay and litigation expense' are insufficient to 'constitute prejudice

sufficient to warrant denial of leave to amend.'" *Sanders v. Houslanger & Assocs., PLLC*, No. 17 Civ. 8985 (DC), 2018 WL 6444921, at *2 (S.D.N.Y. Sept. 6, 2018) (Chin, J., sitting by designation) (quoting *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017)). "The party opposing the amendment bears the burden of proving that prejudice exits." *Ramsay-Nobles*, 2018 WL 6985228, at *8.

The Goldbergs assert three categories of prejudice: to Ken, to Neil, and to "Ken's alleged representatives in the Texas Case."

With regards to Ken, the Goldbergs assert that the Proposed Complaint would force him to defend substantially the same lawsuit in two different jurisdictions and force him to litigate collateral estoppel issues that will result from the overlapping nature of this and the Texas Case.[7] But the Goldbergs do not explain the added burden of the proposed breach of contract claim given that this litigation will proceed even without it. Indeed, the Court has already found that even without this claim this litigation will still involve factual and legal overlap with the Texas Case. Defending an additional claim may require some additional expense, but the Goldbergs have not demonstrated that doing so here would constitute an undue burden.[8] *See Am. Med. Ass'n v. United Healthcare Corp.*, No. 00 Civ. 2800 (LMM), 2006 WL 3833440, at *7 (S.D.N.Y. Dec. 29, 2006) (finding absence of prejudice where "allowing the addition of the proposed claims would not dramatically change the nature of the case against Defendants.")

The Goldbergs assert that the proposed breach of contract claim would also constitute an undue prejudice against Neil because "EMR's opportunistic inclusion of Neil in this lawsuit has and will require additional resources for discovery and trial

---

[7] Defendants also assert that Ken and others would suffer undue prejudice by litigating issues decided by the August Texas Decision, but as previously noted, this opinion was withdrawn.

[8] Defendants nowhere state what additional burden they will face from having to defend the proposed breach of contract claim. EMR's opening brief argued that because the nature of the proposed breach of contract claim is similar to the previously operative complaint, there will be no need to conduct "significant (if any) additional written discovery," and noted that no depositions had already taken place, and no experts had been designated or deposed. (Doc. 130 at 14.)

preparation," a prejudice that the Goldbergs argue is exacerbated by the fact that the proposed breach of contract claim does not allege wrongdoing on Neil's part. (Doc. 132 at 24-25.) The Court has already rejected the Goldbergs' characterization of EMR's inclusion of Neil as a Defendant as opportunistic. The Court is also hard-pressed to see how Neil is prejudiced given that approximately one month before EMR sought amendment, Neil was still in the lawsuit. The proposed breach of contract claim does not significantly change the nature of Neil's involvement in the lawsuit from that time, it merely seeks to correct a deficiency in the previous complaint about which the Goldbergs themselves complained. *See Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 200 (S.D.N.Y. 2014) (finding lack of undue prejudice where defendant had previously attempted to seek discovery over matters related to the proposed claim).

Lastly, the Goldbergs argue that amendment would unduly prejudice Ken's alleged representatives in the Texas Case because they would face the burden and expense of third party discovery and because this Court's rulings might present collateral estoppel issues in the Texas Case.[9] EMR disputes the Goldbergs' standing to complain of the prejudice of amendment against third parties. Although it is true that the prejudice analysis has typically concerned prejudice of amendment against the defendant, the Goldbergs have not established amendment would be sufficiently prejudicial even if the effects were felt by a party to this action. Discovery costs alone are insufficient to establish undue prejudice. *See United States v. Cont'l Illinois Nat'l Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1255 (2d Cir. 1989) ("The adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading.") *Randolph–Rand Corp. of New York v. Tidy Handbags, Inc.*, No. 96 Civ. 1829 (LMK) (DCF), 2001 WL 1286989, at *4 (S.D.N.Y. Oct. 24, 2001) (internal quotation omitted) ("Allegations that an amendment will require the expenditure of some additional

---

[9] The Goldbergs do not identify to whom specifically "Ken's alleged representatives in the Texas Case" refers.

time, effort, or money do not constitute undue prejudice.") (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 351 (2d Cir. 1993)).  And, the Court has already addressed the Goldbergs' argument that litigating collateral estoppel issues presents an undue burden.

       D.     <u>Good Cause</u>

While a party need not generally show good cause for amending its pleading under Rule 15, because the Goldbergs have argued Rule 16 should apply here since a scheduling order has been entered in this case, the Court addresses it briefly.  As noted above, diligence is the primary concern of the good cause analysis, *see Parker,* 204 F.3d at 340, and the Court finds that EMR acted sufficiently diligently in proposing the amended complaint shortly after, and seemingly in response to, the Court's order dismissing its prior claim for contract damages.

Allowing amendment is in line with the Supreme Court's dictate that "that amendment should normally be permitted, and . . . refusal to grant leave without justification is 'inconsistent with the spirit of the Federal Rules.'"  *See Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234 (2d Cir. 1995) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV.    CONCLUSION

For the foregoing reasons, EMR's motion for to amend its complaint is DENIED with respect to the request for consequential damages, but is otherwise GRANTED.

EMR is directed to file its amended complaint no later than July 21, 2020.

The Clerk of the Court is respectfully directed to terminate the motion at Doc. 129.


It is SO ORDERED.


Dated:   July 14, 2020
        New York, New York

 

_____
                EDGARDO RAMOS, U.S.D.J.